**UNITED STATES of America,**
**Appellee,**

v.

**Gary R. McDANIEL, Appellant.**

**Nos. 20722–20724.**

United States Court of Appeals,
Eighth Circuit.

Oct. 14, 1971.

Rehearing and Rehearing En Banc
Denied Jan. 3, 1972.

William R. Mills, Bismarck, N. D., for appellant.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for appellee.

Before GIBSON and ROSS, Circuit Judges, and EISELE,* District Judge.

GIBSON, Circuit Judge.

This is a consolidated appeal by the defendant, Gary McDaniel, from convictions in two cases of embezzlement, and misappropriation of funds and making false entries in the records of a federally insured bank, in violation of 18 U.S.C. §§ 2, 656, and 1005. At the time of the events in question, McDaniel was President of the First Western State Bank of the City of Minot, North Dakota, whose deposits are insured by the Federal Deposit Insurance Corporation.

The facts of the case are not seriously in dispute. The bank was significantly involved in various political activities in the state of North Dakota, a circumstance in apparent violation of North Dakota and Federal statutes, and considerable manipulation of bank records was done by various employees of the bank under McDaniel's direction in order to cover up these activities. Most of the transactions involved in these convictions involved this manipulation, although one involving a $27,000 payment on McDaniel's house was apparently not politi-cally connected. Discovery of these irregularities commenced May 12, 1969, when state bank examiners arrived for a routine examination of the bank. The state examiners were shortly joined by examiners of the FDIC, and this prosecution and conviction followed.

Although the defendant raises numerous points of error, the most significant one is that his conviction was obtained in violation of his privilege against self-incrimination under the Fifth Amendment. The facts surrounding this claim of error are as follows:

Shortly after the discovery of irregularities in the bank's operation by state and federal examiners, an intensive investigation was undertaken into the possibility of criminal violations. The complaint in one of the cases before us was filed August 7, 1969. McDaniel was subpoenaed to appear before a federal grand jury on September 23, 1969. He did appear and refused to testify, relying on his privilege against self-incrimination. Upon leaving the grand jury room following this refusal, he was taken to the United States Attorney's office, where he was served with a subpoena to appear before a state grand jury.

McDaniel, on October 15, 1969, appeared before the state grand jury, which was investigating the bank's operations for violations of North Dakota's Corrupt Practices Act, 3 N.D.C.C. § 16–20–01 et seq. North Dakota law prevents any person from refusing to testify on the grounds of self-incrimination before a grand jury investigating violations of the Corrupt Practices Act, but provides full immunity from prosecution for matters disclosed.[1] McDaniel testified for many days before the state grand jury.

---

* United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The pertinent statute, 3 N.D.C.C. § 16–20–10, provides as follows:
   "No person shall be excused from attending and testifying or producing any books, papers, or other documents before any court upon any investigation, proceeding, or trial for a violation of any of the provisions of section 16–20–08, upon the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate or degrade him. No person shall be prosecuted nor subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be used against him upon any criminal investigation or proceeding."

On November 6, 1969, the United States Attorney for the District of North Dakota wrote to the Assistant State Attorney General conducting the state's investigation, requesting to see a copy of the state grand jury transcript. The United States Attorney conceded at oral argument before us that he did in fact see the transcript, although he did not concede that McDaniel testified to matters relevant to the instant criminal charges. The state grand jury transcript has not been made a part of this record, and we are not aware of its contents.

On December 8, 1969, the state grand jury returned three indictments against McDaniel, the first one containing fifteen counts of violating the Corrupt Practices Act, the second containing one count of embezzlement of bank funds in excess of $10,000, and the third containing three counts of making false entries in the records of the bank. Federal indictments were returned February 4, 1970, and July 31, 1970.

McDaniel's defense counsel in the state proceedings was the same as his court-appointed counsel in the federal prosecutions. Motions were made in the state court to suppress the state indictments on the grounds that McDaniel was immune from prosecution under the statute set forth above because of his testimony before the state grand jury. Although the state's attorney opposed the motion to suppress the indictments and the transcript of the grand jury testimony was not produced in the state proceedings, the state's attorney did stipulate in the state hearing on the motion to suppress that McDaniel had testified under subpoena and oath before the state grand jury on all matters encompassed in the state indictments. On the basis of this concession, the state trial judge quashed the state indictments.

Prior to trial on the federal charges, McDaniel's attorney moved to suppress the indictments on the grounds that he had testified under compulsion before the state grand jury and had been granted immunity from prosecution; he also moved for an order to take testimony and produce evidence in support of the motion to suppress. These motions were denied by the trial court on the grounds that the immunity was granted only as to the state crimes designated in the Corrupt Practices Act (e. g., making campaign contributions), that these crimes bore no relationship to the federal crimes with which he was charged, and that therefore the grant of immunity did not extend to these charges. This ruling was made without an evidentiary hearing.

Prior to reaching the merits of this issue, we must deal with the Government's argument that this claim of error has been waived. The Government contends that a motion to suppress the indictment is not the proper method to raise the issue of a prior grant of immunity, and that it should be raised by a motion to suppress evidence to which the grant of immunity is claimed to attach. McDaniel made no motions to suppress evidence on this ground. We reject the Government's contention.

In the first place, this contention begs the basic issue raised in this case, namely whether McDaniel is entitled to "transactional" as opposed to "use" immunity as a result of his appearance before the state grand jury—i. e., whether his compelled testimony before the state grand jury precludes federal prosecution for such crimes as his testimony related to, or whether the federal government is merely prohibited from using that testimony, either directly or indirectly, in its own prosecution. If, as he contends, McDaniel is entitled to transactional immunity, a motion to suppress the indictment is clearly the only means of accomplishing that end. The authorities recognize that a motion to quash the indictment is the proper method of raising this issue. 8 Wigmore, Evidence (McNaughton ed. 1961), § 2282, (4) p. 519; Smith v. United States, 337 U.S. 137, 145, 69 S.Ct. 1000, 93 L. Ed. 1264 (1949); Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L. Ed. 957 (1941) (plea in bar, which un-

der the modern federal rules would of course be supplanted by a motion to dismiss).

Furthermore, McDaniel's motion to dismiss was accompanied by a motion to take evidence on the immunity issue in which he clearly indicated that once the relevant evidence had been discovered he would make a motion to suppress any tainted evidence. This motion was also denied without an evidentiary hearing. We conclude that this issue was properly raised in the trial court.

This case presents the difficult question of what immunity is sufficient to supplant the Fifth Amendment's privilege against self-incrimination where the questioning sovereign is a State and the prosecuting sovereign is the Federal Government. It is clear in this case that as to the questioning sovereign, the State of North Dakota, McDaniel received "transactional immunity"—i. e., immunity from prosecution for offenses revealed by the compelled testimony. McDaniel contends that under the standards of Counselman v. Hitchcock, 142 U. S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), the Federal Government must also be precluded from prosecuting him for any offenses related to his compelled testimony. He relies primarily on the following language:

> "It is quite clear that legislation cannot abridge a constitutional privilege, and that it cannot replace or supply one, at least unless it is so broad as to have the same extent in scope and effect. * * *
>
> "We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the constitution of the United States. * * * In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates." *Id.* at 585–586, 12 S.Ct. at 206.

The Government, on the other hand, contends that only "use" immunity—i. e., that neither the compelled testimony nor evidence derived from it may be used in the federal prosecution—is required under the principles of Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), and that there was no such use in the instant case. To this contention, McDaniel responds that *Murphy* and *Counselman* are in irreconcilable conflict and urges us to disregard the rule of *Murphy* and grant the absolute immunity called for by *Counselman.*

We agree with the Government that the *Murphy* rule is controlling in the instant situation and we do not think this presents any necessary conflict with the *Counselman* case. *Counselman* was concerned with the situation where the questioning sovereign is also the prosecuting sovereign. In such a situation, the constitutional problems posed by the Fifth Amendment are not complicated by considerations of federalism. Where the questioning sovereign is a State, however, and the prosecuting sovereign is the Federal Government, problems of federalism—which also of course are constitutional in nature—affect the Fifth Amendment question. And it is precisely this situation that *Murphy* controls, preventing the use of the compelled testimony by the Federal Government, but not preventing prosecution provided that the Federal Government has an independent source for its evidence.

■ McDaniel's testimony in the state grand jury proceedings was not actually introducd nor referred to in the federal prosecution. But the Fifth Amendment protection goes further than this and prohibits the Government from using the "fruits" of his testimony. *Murphy,* 378 U.S. at 79, 84 S.Ct. 1594. The Government contends that it has not violated this aspect of the *Murphy* rule, relying on the blanket assertion that all its evidence was obtained from an independent source. The *Murphy* case makes clear, however, that this issue is a question of fact which requires an eviden-

tiary hearing and that the Government has the burden of proof:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities *have the burden of showing* that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 (emphasis added).

██ Since no evidentiary hearing was held on this issue, under ordinary circumstances we would remand the case for an evidentiary hearing as to whether the defendant in fact testified to matters related to the federal prosecution, as he alleges, and if so whether the Government had an independent source for its evidence. The circumstances of this case, however, are not ordinary, for we are faced with the fact that the United States District Attorney requested and received a transcript of the compelled state testimony. We conclude that this conduct violated the defendant's Fifth Amendment rights and constitutes a prima facie "use" of the testimony which is prohibited by the *Murphy* exclusionary rule.

We reach this conclusion for the following reasons. The aim of the *Murphy* rule is to leave "the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity." 378 U.S. at 79, 84 S.Ct. at 1610.[2] This purpose can be achieved only if the Federal Government is forbidden not only to introduce the testimony as evidence or to obtain investigatory leads from it, but is also forbidden to see it. For if the witness had "claimed his privilege in the

absence of a state grant of immunity," there would be nothing for the Federal Government to see. Where the witness has been compelled by a state to testify, he can be put in the same position vis-a-vis the Federal Government only if the Federal Government is forbidden to see his testimony.

Substantial support for this interpretation of the *Murphy* rule of use immunity as applied to another sovereign jurisdiction can be found in Mr. Justice White's concurring opinion in that case, which referred to the Court's holding as a "rule forbidding federal officials *access* to statements made in exchange for a grant of state immunity." 378 U.S. at 93, 84 S.Ct. at 1610. In arguing that this rule would adequately protect the witness' Fifth Amendment rights, Mr. Justice White emphasized that the testimony is not ordinarily available to the Federal Government and could be obtained only by misconduct, "a matter quite susceptible of proof."

"In the absence of any misconduct or collusion by federal officers, whatever increase there is, if any, in the likelihood of federal prosecution following the witness' appearance before a state grand jury or agency results from the inferences drawn from the invocation of the privilege to specific questions on the ground that they are incriminating under federal law and not from the fact the witness has testifed in what is frequently an *in camera* proceeding under a grant of immunity. Whether *in camera* or not, the testimony itself is hardly reported in newspapers *and the transcripts and records of the state proceedings are not part of the files of the Federal Government. Access and use require misconduct and collusion, a matter*

---

2. And see Mr. Justice White's concurring opinion, *id.* at 101, 84 S.Ct. at 1615.

"This approach secures the protections of the privilege against self-incrimination for all defendants without impairing local law-enforcement and investigatory activities. It, of course, forecloses the use of state-compelled testimony *in any*

*manner* by federal prosecutors, but the privilege in my view commands that the Federal Government should not have the benefit of compelled incriminatory testimony. Both the Federal Government and the witness *are in exactly the same position as if the witness had remained silent."* (emphasis added).

*quite susceptible of proof."* Id. at 102, 84 S.Ct. at 1616 (emphasis added).

Another reason for concluding that the *Murphy* rule forbids federal access to testimony compelled by a state grant of immunity is our belief that the Fifth Amendment requires immunity from federal prosecution, or in other words "transactional immunity", where the questioning sovereign is the Federal Government. Of course, if the Federal Government could compel the testimony itself and then prosecute for matters related to the testimony on the basis of "untainted" evidence, or in other words grant only "use immunity", there would be no problem in this case, for by hypothesis the Government would have had the right to see the testimony. And indeed, one Circuit Court of Appeals has held that *Murphy* permits such a result. See Stewart v. United States, 440 F.2d 954 (9th Cir.), cert. granted, 402 U.S. 971, 91 S.Ct. 1668, 29 L.Ed.2d 135 (1971). However, the Seventh Circuit, the Third Circuit and the District Court for the Southern District of New York have concluded that transactional immunity is required as to the questioning sovereign, and we agree with those decisions. *See* In re Korman, 449 F.2d 32, 9 Crim.L.Rep. 2161 (7th Cir. 1971); Catena v. Elias, 449 F.2d 40, 9 Crim.L. Rep. 2475 (3d Cir. 1971); In re Kinoy Testimony, 326 F.Supp. 407, (S.D.N.Y. 1971). *See also* the dissenting opinions in Piccirillo v. New York, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971) (the majority did not reach the issue of what type of immunity is constitutionally required).

It is somewhat ironic that the debate concerning the constitutional sufficiency of immunity statutes to replace the Fifth Amendment privilege against self-incrimination has shifted its focus so radically in recent years. In the three cases in which the Supreme Court has upheld immunity statutes in the face of a challenge that they violated Fifth Amendment rights, those statutes provided complete immunity from prosecution. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960). Those statutes were sustained in the face of vigorous dissents which contended, not that the statutes gave too much in return for the forced waiver of the Fifth Amendment, but that even complete immunity from prosecution was insufficient to accomplish the protection accorded to witnesses by the Fifth Amendment privilege. As Mr. Justice Brennan has pointed out in his dissent in *Piccirillo*, it has never been suggested by the Supreme Court in cases involving a single jurisdiction that anything less than complete immunity from prosecution is sufficient to replace the privilege against self-incrimination. Piccirillo v. New York, 400 U.S. at 569, 91 S.Ct. 520. (Majority dismissed writ as improvidently granted.)

That the *Murphy* rule of "use immunity" was not intended to be the standard to be applied to a single jurisdiction is demonstrated by the case of Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L. Ed.2d 165 (1965), decided only two terms after the *Murphy* case. In *Albertson*, the Supreme Court struck down a federal immunity statute on the grounds that it did not meet the *Counselman* requirement of immunity from prosecution, and hence violated the Fifth Amendment. The Court reasoned:

In Counselman v. Hitchcock, 142 U.S. 547 [12 S.Ct. 195, 35 L.Ed. 1110], decided in 1892, the Court held 'that no [immunity] statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege * * *,' and that such a statute is valid only if it supplies 'a complete protection from all the perils against which the constitutional prohibition was designed to guard * * *' by affording 'absolute immunity against future prosecution for the offense to which the question relates.' *Id.,* at 585–586 [12 S.Ct. at 206.] *Measured*

*by these standards,* the immunity granted by § 4(f) is not complete." 382 U.S. at 80, 86 S.Ct. at 199 (emphasis added).

No suggestion was made in *Albertson* that a "use immunity" standard would meet constitutional requirements, and the *Murphy* case was not even cited. Indeed, the case implicitly rejects such a standard. The Government in that case argued that the information required by the registration form would not be incriminatory because it already had all the information required by the form. The Supreme Court rejected this argument:

> "The representation that the information demanded is of no utility is belied by the fact that the failure to make the disclosure is so severely sanctioned; and permitting the incompleteness of § 4(f) to be cured by such a representation would render illusory the *Counselman* requirement that a statute in order to supplant the privilege, must provide 'complete protection from all the perils against which the constitutional prohibition was designed to guard'." *Id.* at 81, 86 S.Ct. at 200.

■ We think Counselman v. Hitchcock clearly commands "transactional immunity" against the questioning sovereign, and that the constitutional principle requiring "absolute immunity" or protection as wide in scope as the privilege against self-incrimination itself has remained unimpaired throughout the years. The Supreme Court has never deviated from this principle as respects the questioning sovereign, but has consistently and repeatedly cited *Counselman* with approval in applying its holding. *See, e. g.,* Brown v. Walker, *supra,* (1895); McCarthy v. Arndstein, 266 U. S. 34, 42, 45 S.Ct. 16, 69 L.Ed. 158 (1924); United States v. Monia, 317 U.

S. 424, 428, 63 S.Ct. 409, 87 L.Ed. 376 (1943); Hoffman v. United States, 341 U.S. 479, 490, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Ullmann, supra* (1956); *Albertson, supra* (1965).

The *Murphy* case clarified the existing law and overruled cases restricting the privilege to the questioning sovereign. In expanding the privilege to include a possible but yet real danger of prosecution by a non-questioning sovereign, the *Murphy* Court did establish that as to a non-questioning sovereign "use immunity" was a minimal requirement, and that "use immunity" was a permissible constitutional procedure to use in the dual sovereignty situation. The Court recognized the validity of the privilege as against a non-questioning sovereign, and also the imposition of the Fifth Amendment privilege on the states by way of the Fourteenth Amendment as held in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

■ The "use immunity" recognized as constitutionally permissible in *Murphy* appears to be a practical accommodation where dual sovereignties are involved as in our Federal structure, and has the effect of preserving in substantial measure the individual's constitutional privilege against self-incrimination as to a non-questioning sovereign, while allowing the non-questioning sovereign to administer its own criminal laws and effectuate its own public policy within certain limits.[3]

■ If the premise is accepted that as to the Federal Government only transactional immunity is sufficient to supplant the privilege against self-incrimination, then it follows that where there has been a state grant of immunity in return for compelled testimony, the Federal Government can obtain access to that testimony only at the cost of foregoing prosecution as to those matters

3. Congress can, of course, extend the immunity against state prosecution if it so desires by way of the Supremacy Clause of the Constitution. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1895); Adams v. Maryland, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). States, of course, do not have a corresponding power to impose their immunity grants upon the Federal Government.

to which the testimony relates. For if the Federal Government must forego prosecution when it compels testimony, under a grant of immunity, then surely it cannot avoid this result by permitting the State to compel the testimony and then obtaining that testimony for its own purposes. By forbidding prosecution under these circumstances, the principles of the transactional rule as to a single jurisdiction are maintained.

From a practical standpoint, also, forbidding prosecution under these circumstances seems to be the only appropriate sanction to apply. If the Government were allowed to prove that it had an independent source for its evidence in spite of the fact that it has had access to and actually seen the compelled testimony, the *Murphy* exclusionary rule of either testimony or its fruits would be significantly weakened. For the Government's burden to prove its independent source arises not upon a showing that it has seen the compelled testimony, but merely upon a showing that the defendant has in fact testified under a state grant of immunity. 378 U.S. at 79 n. 18, 84 S.Ct. 1594. If the Federal Government is allowed to prosecute despite the fact that it has seen the compelled testimony, there is clearly no deterrent to its seeking access to that testimony. Therefore, if, as argued above, *Murphy* is intended to forbid such access, the only effective sanction for this evasion of the *Murphy* rule is to forbid prosecution.

For the foregoing reasons, we conclude that if in fact McDaniel testified before the state grand jury as to matters related to the instant prosecution, then since the Government has seen that testimony, the indictments should be dismissed. To avoid possible misunderstanding, we think it appropriate to emphasize that the failure of the Federal prosecution here arises not because McDaniel was granted immunity under state law, but because the Federal Government took advantage of this immunity to gain access to his testimony. Had there been no such access, the prosecution could have proceeded as normal, subject, on proper objection, to a show-ing that the Government had an independent source for its evidence.

■ We next deal with the Government's contention, which was accepted by the trial court as the basis for disposition of this issue, that there is no immunity, either use or transactional, involved in this case because McDaniel's testimony before the state grand jury related only to charges of bribery and corruption, not embezzlement and misapplication of bank funds. The test, however, of whether immunity has been acquired in return for compelled testimony is not what legal labels are attached to the criminal conduct which is the subject of the incriminating testimony, but whether the conduct revealed by the compelled testimony is related to the subject matter of the federal prosecution. The defendant must demonstrate "that he has testified, under a state grant of immunity, to *matters related* to the federal prosecution * * *." Murphy v. Waterfront Comm'n, 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 (emphasis added). This obviously is a question of fact which cannot be determined without an evidentiary hearing.

■ Since no evidentiary hearing was held on this matter in the trial court, there are not sufficient facts in the record to enable us to make a final determination on this issue. The Government, though admitting that it has seen the transcript of the state grand jury testimony, denies that McDaniel testified as to any matters relating to the federal prosecution. There is enough evidence in the record, however, to indicate that McDaniel's allegation that he has testified as to these matters is not frivolous and that therefore a remand for an evidentiary hearing is warranted.

■ The essence of McDaniel's defense has been that whatever wrongdoing he participated in with regard to the bank's operations was solely for the purpose of "covering up" the political machinations of the bank and its directors. There is evidence in the record to support this contention. While such facts would of course constitute no de-

fense to the instant charges, they lend credence to his contention that in testifying before the state grand jury as to matters relating to the unlawful political activity at the bank, he testified to matters related to the instant charges. Furthermore, it is to be noted that the state charges against McDaniel, including charges of embezzlement and misappropriation of bank funds, were dismissed on the grounds that they were covered by his testimony under the grant of immunity. While this state finding is not ultimately binding on the Federal Government, it is certainly relevant to McDaniel's prima facie showing that he has in fact testified as to the matters here prosecuted.

In light of the present state of the record as to the immunity issue, the cause is remanded for an evidentiary hearing. If the trial court finds that McDaniel testified before the state grand jury under a grant of immunity to matters related to the instant prosecution or any severable part of them, the charges on which testimony was given must be dismissed; if it finds that he did not so testify, the judgments shall stand, subject of course to the right of either party to appeal as to this issue.

▮ As to the other claims of error raised by the defendant, we affirm the judgment, and will discuss them only briefly.

McDaniel claims that error was committed when his attorneys were forced to turn over evidence to the federal grand jury in response to a subpoena, which evidence fell within the attorney-client privilege, relying on Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). We need not determine on this record whether or not this material was protected by the attorney-client privilege, for we find that the error, if any, has not been properly raised in the trial court. The record reveals that all the evidence so seized was made available to McDaniel and his attorney prior to trial for their inspection, and that they made photocopies of any-

thing they desired. If any of this evidence was thereafter offered or used at the trial, a motion to suppress or an objection to its admission on these grounds should have been made. A motion to quash the subpoena could also have been made. No such motions were made, and indeed even in this court, McDaniel does not indicate which evidence was improperly admitted because it came within the attorney-client privilege. No reversible error has been shown in this respect.

▮ He also complains that he was denied a fair trial because, being indigent, he was not afforded adequate resources at government expense to prepare his defense. His allegations in this respect are most vague and general. Counsel of defendant's own choosing was appointed by the court on April 1, 1970, and apparently had actually been working on the case for some time prior to that. The case did not come to trial until September 15, 1970. During this period the defendant was allowed extensive discovery of the Government's evidence, and all costs of discovery, and trial, such as witness' fees, subpoenas, etc., were borne by the Government. The only specific claim of error is that the trial court denied his request for an additional court-appointed attorney. The record reveals that the motion for an additional attorney was not made until only four days before the case was set for trial and that no factual showing was made as to why a second attorney was needed at this late date. Nor has any such showing been made in this court. There was no abuse of discretion in the trial court's failing to grant the motion for a second appointed attorney.

▮ The defendant also complains that he did not receive a fair trial because the jury was biased and prejudiced; in this regard, he contends that the trial court erred in denying his motion for a change of venue to an adjoining state. The first trial was held in Minot and no motion for a change of venue was made as to this trial. The record reveals that most pretrial public-

ity had occurred quite some time before the trial and that any publicity which occurred shortly before the trial was due to statements made to the press by the defendant and his attorney. Upon this occurrence the trial court entered an order restricting pretrial statements. Any members of the jury panel who indicated that they had formed an opinion on the case due to newspaper publicity were excused for cause. No record was made as to the extent of the pretrial publicity. We find no error with respect to the Minot trial.

Immediately following the guilty verdict at the Minot trial, defense counsel moved to have the remaining trials transferred to Bismarck. This motion was granted and trial set for September 15. On September 9, the defense moved for a change of venue to another state. No intervening circumstances which would justify this change were presented, and as before, no record as to the pretrial publicity was made. The motion was denied. We also find no error in this regard.

All other contentions raised by the defendant have been considered and rejected as being without merit.

The case is remanded for further proceedings consistent with this opinion.