**UNITED STATES of America, Plaintiff,**

v.

**Robert RICE, State's Attorney of St. Clair County, Illinois, Defendant.**

Civ. No. 76–3212.

United States District Court,
E. D. Illinois.

Oct. 14, 1976.

Henry A. Schwarz, U. S. Atty., E. D. Ill., East St. Louis, Ill., for plaintiff.

Robert H. Rice, Steven Rice, Carmen Durso, Belleville, Ill., for defendant.

William J. Billeaud, Edwardsville, Ill., for intervenor Marvin Schwartz.

## MEMORANDUM

JUERGENS, Senior District Judge.[*]

The United States of America, acting by and through its United States Attorney for the Eastern District of Illinois, filed this complaint for a temporary and permanent injunction, prohibiting Robert Rice, State's Attorney of St. Clair County, Illinois, or any of his employees, from prosecuting Case No. 76-CF-560 in the Circuit Court of the Twentieth Judicial Circuit, entitled "The People of the State of Illinois, Plaintiff, versus Marvin Schwartz, Defendant," or in the alternative, from using certain evidence against Marvin Schwartz in a trial of the case.

This Court has jurisdiction under the provisions of Sections 1345 and 2283, Title 28, U.S.C.

The complaint generally alleges that:

On October 22, 1974, the United States District Court for the Eastern District of Illinois entered an order compelling the testimony of Marvin Charles Schwartz under the provisions of Section 6001 et seq., Title 18, U.S.C. Pursuant to the order, Marvin Charles Schwartz testified before the Federal Grand Jury in the Eastern District of Illinois on October 22, 1974, and October 24, 1974, and at other times thereafter as required by the order of Court compelling testimony.

Thereafter, Marvin Schwartz testified in several criminal cases before the United States District Court, pursuant to the Order to Compel Testimony; namely:

1. *United States v. John William Cook,* Cr. 74-116-E;
2. *United States v. Del Rutherford and David Johnson,* Cr. 116-E;
3. *United States v. Charles Merritts, et al.,* Cr. 74-97-E;
4. *United States v. Annalinda Hellman,* Cr. 75-23-E;
5. *United States v. Robert D. Jackson and John Hardy,* Cr. 75-89-E;
6. *United States v. Robert Rice and James Spanos,* Cr. 76-8-E;
7. *United States v. Ernest Smith, Harvy Gardner, Robert Jackson, and Norman Allen,* Cr. 75-88-E.

The testimony given by Marvin Charles Schwartz on October 22, 1974, and October 24, 1974, before the Federal Grand Jury for the Eastern District of Illinois, included admissions by him that he had conducted certain transactions through one Al Rolek in regard to making payments to a judge in the Twentieth Judicial Circuit for the State of Illinois.

As a result of the testimony Marvin Schwartz gave on October 24, 1974, Mr. Al Rolek was called as a witness before the Grand Jury on November 26, 1974, and January 16, 1975.

The return of the Grand Jury subpoenas for each of the appearances is on file in the Office of the Clerk of the United States District Court for the Eastern District of Illinois and was there available to newsmen. Rolek's appearance before the Grand Jury was a matter of newspaper publicity concurrent with the filing of the subpoenas.

The testimony concerning the transactions between Schwartz, Rolek and a judge of the Twentieth Judicial Circuit was given pursuant to an order of the Federal Court, compelling Marvin Charles Schwartz to testify and providing that the testimony could not be used against him in accordance with immunity provisions of the Organized Crime Control Act of 1970, 18 U.S.C. 6002.

In each of the above enumerated cases, Marvin Charles Schwartz was compelled to testify and the information was furnished to defense counsel as required under the

---

[*] Senior United States District Judge William G. Juergens of the Eastern District of Illinois is sitting by designation.

"Brady" doctrine. The information was furnished at various dates prior to each of the trials. The material which was distributed to defense counsel as "Brady" material received wide circulation and was the basis of inquiry as to Marvin Schwartz's activities in other proceedings in the Circuit Court of St. Clair County, Illinois, namely:

1. *Linda K. Schwartz v. Marvin C. Schwartz,* No. 74–D–1106.

2. *The People of the State of Illinois vs. Howard Crass,* No. 74–CF–115.

Prior to March 1, 1976, defendant Robert Rice, State's Attorney of St. Clair County, Illinois, received a copy of the Grand Jury testimony of Marvin Schwartz.

On the 3rd day of March, 1976, the Grand Jury of the United States District Court for the Eastern District of Illinois returned an indictment against Robert Rice and James Spanos.

Thereafter and after having been fully informed by having received a copy of the Grand Jury transcript of the testimony of Marvin Schwartz, Robert Rice did cause testimony to be presented to the St. Clair County Circuit Court Grand Jury, and on the 17th day of June, 1976, the St. Clair County Grand Jury returned an indictment which charged Marvin Schwartz with violation of Paragraph 33–1A of the Illinois Revised Statutes. The substance of the indictment is based on the matters Marvin Schwartz testified to under the order of compulsion by the Federal District Court.

Particulars supplied by the State in the indictment against Marvin Schwartz, 76–CF–560, listed prosecution witnesses to be called as follows:

Joan Bergman;

Larry Spahn, Metro East Journal;

Albert S. Rolek;

Jeff Lightburn, Belleville News Democrat;

Jane Ferris, Court Reporter;

Edward M. Whiting and Staff, Circuit Clerk's Office;

Joseph B. McDonnell, Attorney at Law;

Clyde L. Kuehn, Assistant State's Attorney;

Frances Koszelnik.

The name of the witness Albert S. Rolek as a purveyor of money became known to the world as a direct result of the compelled testimony of Marvin Schwartz.

The knowledge of Larry Spahn and Jeff Lightburn, as to the matters which are the circumstances of the indictment of Marvin Schwartz, came to them as a result of interviews with Marvin Schwartz after he believed that he was immunized.

Marvin Schwartz is a material witness in cases pending before the Federal Court.

The Court has an obligation to protect the sanctity of its orders, not only as affect Marvin Schwartz, but others who have testified as to matters pending before the Court.

The proceedings in the Circuit Court of St. Clair County in 76–CF–560 are in direct violation of the Federal Court's order of October 22, 1974, which compelled the testimony of Marvin Schwartz and prohibited its being used against him.

If the defendants are permitted to use the testimony directly or indirectly obtained from Marvin Charles Schwartz's own testimony given under order of this Court, there would be immediate and irreparable harm to the United States and to the United States jurisdiction over pending and future organized crime and racketeering cases.

It is necessary in the interest of justice that this Court enter a temporary restraining order, restraining the State's Attorney's Office for St. Clair County, Illinois, from using any of the evidence which has been developed against Marvin Charles Schwartz either directly or indirectly as a result of his testimony before the Federal Grand Jury for the Eastern District of Illinois and, in particular, the testimony of one Al Rolek.

Plaintiff prays that the Court issue a temporary restraining order and a permanent injunction, enjoining the defendant from further prosecuting Cause No. 76–CF–560 in the Circuit Court of St. Clair County and that pending a trial on the merits the Court issue a preliminary injunction.

At this stage of the proceedings it is unnecessary to consider the temporary injunction, inasmuch as a temporary injunction was issued pending the receipt of all the testimony in order to make a determination as to whether or not a permanent injunction should or should not be granted. This temporary restraining order became necessary since Cause No. 76–CF–560 in the Circuit Court of the Twentieth Judicial Circuit was set for trial prior to the date for the final hearing of evidence in this matter.

The cause is presently before the Court on the question of issuing a permanent injunction as prayed.

Section 6002, Title 18, U.S.C., provides when a witness is compelled by a district court order to testify under the claim of privilege "the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

We are not here dealing with a prosecution for perjury or giving a false statement or failure to comply with the order. Thus, the question is whether or not the statute provides immunity from prosecution under the facts as they are developed in this case.

The Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1971), considered the breadth of the protection afforded by the section and stated at page 460, 92 S.Ct. at page 1664:

"* * *. The statute provides a sweeping proscription of any use, direct or indirect, of the compelled testimony and any information derived therefrom:

'[N]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case . . . .' 18 U.S.C. § 6002.

This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.

A person accorded this immunity under 18 U.S.C. § 6002, and subsequently prosecuted, is not dependent for the preservation of his rights under the integrity and good faith of the prosecuting authorities. As stated in *Murphy* [*Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678—1964]:

'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' 378 U.S., at 79 n. 18, 84 S.Ct., at 1609.

This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

This is very substantial protection, commensurate with that resulting from invoking the privilege itself. The privilege assures that a citizen is not compelled to incriminate himself by his own testimony. It usually operates to allow a citizen to remain silent when asked a question requiring an incriminatory answer. This statute, which operates after a witness has given incriminatory testimony, affords the same protection by assuring that the compelled testimony can in no way lead to the infliction of criminal penalties. The statute, like the Fifth Amendment, grants neither pardon nor amnesty. Both the statute and the Fifth Amendment allow the government to

prosecute using evidence from legitimate independent sources.

The statutory proscription is analogous to the Fifth Amendment requirement in cases of coerced confessions. A coerced confession, as revealing of leads as testimony given in exchange for immunity, is inadmissible in a criminal trial, but it does not bar prosecution. Moreover, a defendant against whom incriminating evidence has been obtained through a grant of immunity may be in a stronger position at trial than a defendant who asserts a Fifth Amendment coerced-confession claim. One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources. * * *."

In *United States v. McDaniel,* 482 F.2d 305 (8th Cir.1973), McDaniel gave testimony before a grand jury, which was incriminating and before giving the testimony was granted immunity from prosecution, based on the testimony given. Thereafter, the United States Attorney requested a copy of the testimony, which he received, read and returned to the Assistant State Attorney General. He was unaware that the testimony was protected by a statutory grant of immunity; nevertheless, before he could proceed with the prosecution, it was incumbent upon the government to meet the heavy burden of proof attendant upon having read the privileged testimony. The Court stated:

"We find, however, that even though the voluminous reports, which we have examined, may have afforded proof of an independent source of the evidence adduced at McDaniel's trial, such reports nevertheless fail to satisfy the government's burden of proving that the United States Attorney, who admittedly read McDaniel's grand jury testimony prior to the indictments, did not use it in some significant way short of introducing tainted evidence. * * * Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy."

The Court further stated that, even though the United States Attorney appearing in the trial adhered to the high professional standards of the legal profession and to the duties and responsibilities of a United States Attorney and even though he asserted he did not use the testimony in any form:

"* * *, we cannot escape the conclusion that the testimony could not be wholly obliterated from the prosecutor's mind in his preparation and trial of the case. * * *."

In *United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y.1973), the Court was confronted with facts similar to those presented here. The Court there stated:

"* * * once the subject matter was touched upon in the privileged testimony, and the prosecutor had read it, he could have used it in a variety of ways in this criminal prosecution. The possibility of such use, and the impossibility of clearly showing that the use did not occur calls for the holding in this case that the defendants were denied the constitutional protection that their silence would have given them. * * *. The breadth of this ruling is justified by the language in *Kastigar* that the immunized testimony could not be used 'in *any* respect.'

Support for the conclusion reached here may be found in *United States v. McDaniel,* 449 F.2d 832 (8th Cir.1971), * * *. That case relied on *Murphy v. Waterfront Commission, supra.* Both of the cases were concerned with interjurisdictional immunity. However, *Kastigar* explicitly adopted the same rule of privilege where only one sovereign is concerned. In *McDaniel,* the court said 449 F.2d at 837:

'The circumstances of this case, however, are not ordinary, for we are faced with the fact that the United States District Attorney requested and received a transcript of the compelled

state testimony. We conclude that this conduct violated the defendant's Fifth Amendment rights and constitutes a prima facie 'use' of the testimony which is prohibited by the *Murphy* exclusionary rule.'

The question of whether the remedy for this violation of defendants' constitutional rights should be by way of suppression of evidence or by dismissal was determined by me in favor of the latter course in the prior opinion which initiated these proceedings. 356 F.Supp. 1091, *supra*. After the hearing and the clarification of the fact issues involved, my original views have been confirmed that in this case dismissal is the only proper remedy. It is impossible to suppress specific evidence in the light of the problem involved."

At the hearing in this cause, the evidence showed that Marvin Schwartz, the defendant in the State action (hereafter Schwartz), was called before the United States Grand Jury for the Eastern District of Illinois (hereafter Federal Grand Jury) and there gave testimony concerning the identical matter which is the gist of the indictment returned against him by the St. Clair County Circuit Grand Jury for the Twentieth Judicial Circuit of Illinois (hereafter State Grand Jury). When called to testify before the Federal Grand Jury, he asserted his Fifth Amendment privilege and thereupon was granted immunity under the statute in order to compel his testimony. Subsequent to the grant of immunity, he testified fully before the Federal Grand Jury about every matter questioned.

The Court has examined the testimony presented to the Federal Grand Jury and has also examined the transcript of the testimony before the State Grand Jury. There is some question whether the inquiry before the State Grand Jury was wholly without benefit of any prior knowledge that may have been gained by the State prosecutor's having read the Federal Grand Jury transcript. A copy of the transcript of the testimony before the Federal Grand Jury was made available to the prosecutor prior to the proceedings before the State Grand Jury. The Court has examined both Grand Jury transcripts and finds there are parts of the State Grand Jury transcript which lead one to the inescapable conclusion that inquiries before the State Grand Jury are bottomed on information obtained from the Federal Grand Jury proceedings. The testimony before this Court shows no independent source whereby this information could have been obtained by the prosecutor in the State Grand Jury proceedings other than from the Federal Grand Jury testimony. The Court is not saying, nor does it imply, that any improper use was intentionally made of the testimony before the Federal Grand Jury. As the courts have ruled, even though use of the testimony is completely innocent and done without any willful or malicious intent, it is nevertheless tainted and may not be used.

It is practically impossible, under the circumstances here, to say that no use was in fact made of the information received from the testimony before the Federal Grand Jury. In fact, some of the questions presented at the State Grand Jury proceedings indicate that the thinking of the inquisitor before the State Grand Jury was controlled, or at least influenced, by what he had previously read from the Federal Grand Jury transcript. This perhaps could have been an unconscious reaction, but even an unconscious reaction is not permitted in cases of this nature.

In order for the United States Government to obtain information from informants who would otherwise be entitled to avail themselves of the provisions of the Fifth Amendment and refuse to testify, Congress passed the Organized Crime Control Act of 1970; namely, Title 18 U.S.C. § 6002, which provides complete immunity from prosecution as to any testimony there given. By the passage of this Act, it became possible for government agents to locate and utilize testimony of otherwise reluctant and unavailable witnesses. For us now to say that the witness here, who has on numerous occasions testified before the Federal Grand Jury and at various trials in

the United States District Court, is not now entitled to all that was meant to be afforded him by Congress and to permit the testimony given under a grant of immunity to be used against him in the State Court action for matters which he testified to in the Federal Grand Jury proceedings, would be to emasculate the whole purpose of the Crime Control Act and would be a travesty on justice. This the Court is not willing to do.

The State's Attorney testified that he did not use the information received from the Federal Grand Jury in any way in attempting to obtain information or in questioning of the Grand Jury or conducting investigation or obtaining evidence or in any way whatsoever; however, the testimony did show that the State's Attorney had in fact read the testimony taken before the Federal Grand Jury before the investigation of the State Grand Jury commenced.

Human frailties being as they are, and assuming, as we do, that the State's Attorney acted in all good faith in his inquiry before the State Grand Jury, the fact remains that we do have human frailties and it is nigh impossible, after having read the Federal Grand Jury testimony, to conduct a completely separate investigation and to separate what was learned from the Federal Grand Jury testimony from what was not.

As previously stated, from the reading of both grand jury transcripts, it appears, at least in part, that the testimony does overlap and some questions appearing in one are almost identical to some questions appearing in the other.

In the State proceedings questions were asked that bore directly on the information contained in the Federal proceedings. No foundation preceded the questions being asked to show that the questions were not framed from information obtained from the Federal proceedings.

State's Attorney Rice asserts that the information used to proceed with the State Grand Jury investigation was obtained from independent sources and was not in any way connected to or obtained from or influenced by the Federal Grand Jury proceedings. The defendant questioned several witnesses in his attempt to show that the information was in fact gleaned from sources other than from the Federal Grand Jury proceedings. Examination of this testimony shows that the witnesses called to substantiate the defendant's position were not certain as to the time when the information they obtained was in fact received. There was testimony by the State's Attorney's investigator tnat the subpoena from the State Grand Jury had issued prior to the time that the Federal Grand Jury subpoenas were issued. Neither this subpoena nor the return thereon was ever produced in court. The testimony of the person upon whom the subpoenas were allegedly served directly refutes this testimony. This witness stated categorically that he was never subpoenaed to testify before the State Grand Jury until after the State's Attorney had been tried for charges (of which he was later acquitted) in the Federal Court. There was other testimony by which the defendant attempted to establish his position; however, close examination of this testimony fails to set forth any specific dates which must be established if the defendant is to prevail in his claim that the information, upon which the State Grand Jury proceedings was based, was obtained from an independent source.

■ Once the defendant was provided with a copy of the transcript of proceedings before the Federal Grand Jury, the burden of proof shifted to the defendant to show that in fact the information pursuant to which he proceeded was obtained from independent sources. The burden placed upon the defendant in this situation is a heavy burden which must be supported by substantial, clear and convincing evidence.

■ The Court has minutely examined all of the evidence presented to it, including the testimony and the various documents, and finds that the defendant has failed to meet the heavy burden of proof, which is placed upon him in this action, in that the evidence fails to show that the information pursuant to which the State Grand Jury

proceedings were pursued was based on independent sources of information and free from taint of the poison fruit from the vine of the compelled testimony. The evidence failed to show that the poison from this vine did not in fact permeate the State Grand Jury proceedings.

Schwartz is entitled to the full protection of the immunity granted him by the United States District Court for the Eastern District of Illinois, pursuant to which his testimony was received. Since this Court has previously granted immunity to Marvin Charles Schwartz, it has the duty to enforce the order granting the immunity to fully guarantee the protection afforded by the Organized Crime Control Act, namely, § 6002, Title 18, United States Code.

Accordingly, the Court will grant a permanent injunction, restraining and enjoining the defendant, his successors in office, and all persons acting in concert with him, from proceeding with Case No. 76–CF–560 in the Circuit Court of the Twentieth Judicial Circuit, entitled "The People of the State of Illinois, Plaintiff, versus Marvin Schwartz, Defendant," all as per order of Court on file simultaneously herewith, signed by the Judge.

See Order.