**UNITED STATES of America, Appellant,**

v.

**Gary R. McDANIEL, Appellee.**

**Nos. 73-1051 to 73-1053.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1973.

Decided July 31, 1973.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for appellant.

William R. Mills, Bismark, N. D., for appellee.

Before MATTHES, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

We have for consideration the government's appeals from judgments entered after an evidentiary hearing held on remand as directed by this court on defendant's appeals from his convictions.

*See* United States v. McDaniel, 449 F.2d 832 (8th Cir. 1971), cert. denied, 405 U. S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972). The judgments from which appeals are now taken vacated the earlier judgments of conviction, dismissed the indictments, ordered McDaniel discharged, and his bond exonerated. The factual circumstances warrant detailed explication.

Defendant Gary McDaniel * was, prior to these proceedings, President of the First Western State Bank in Minot, North Dakota. That bank and McDaniel apparently were for some time engaged in irregular and illegal activities involving the bank assets. These irregularities were first discovered on or about May 12, 1969, by state bank examiners who were soon followed by examiners for the Federal Deposit Insurance Corporation. Consequently, state prosecutorial authorities began investigating the political machinations of the bank and its officers as possible violations of North Dakota's Corrupt Practices Act, 3 N.D.C.C § 16–20–01 et seq.; and the United States Attorney for the District of North Dakota began investigating the personal maneuverings of the bank officers for the purpose of determining whether federal criminal statutes had been violated.

On September 23, 1969, defendant, who was then residing in the state of Minnesota, was subpoenaed to appear before a federal grand jury at Fargo, North Dakota, on October 7, 1969. He appeared, but claimed his privilege against self-incrimination, and gave no testimony. McDaniel went from the grand jury room to the United States Attorney's office, where the local sheriff immediately served upon him a subpoena to appear before a state grand jury at Minot, North Dakota, on October 15, 1969.

Prior to his appearance before the state grand jury, defendant sought, in exchange for his testimony, immunity from prosecution under 6 N.D.C.C. §

31–01–09 (Supp.1971), which was denied. Defendant's attorney then discovered 3 N.D.C.C. § 16–20–10, which provides in pertinent part:

"No person shall be excused from attending and testifying . . . before any court upon any investigation . . . for a violation of . . . section 16–20–08, upon the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate . . . him. No person shall be prosecuted nor subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence . . . .

McDaniel's attorney realized that this statute automatically conferred transactional immunity upon any witness subpoenaed to testify in an investigation under the North Dakota Corrupt Practices Act, and accordingly he advised McDaniel to appear before the state grand jury and fully divulge all his illegal actions.

That the state prosecutors were unaware of this automatic immunity statute is evidenced by the fact that they subpoenaed all potential defendants, thereby immunizing every suspect except the bank itself, and by the fact that they expressly granted immunity to one grand jury witness under the more recent statute, § 31–01–09.

In any event, McDaniel appeared at the state grand jury and gave self-incriminating testimony filling three volumes of transcript. On November 6, 1969, the United States Attorney requested a copy of McDaniel's testimony from an Assistant State Attorney General, which he received the late afternoon of November 20. Since the United States Attorney too apparently was unaware that McDaniel's testimony was protected by a statutory grant of immunity, he read the three volumes of transcript and then returned them the next morning.

* Hereinafter McDonald is referred to as "defendant" or by his surname.

Thereafter, on December 8, 1969, McDaniel was indicted by the state on fifteen counts of violating the Corrupt Practices Act, one count of embezzlement, and three counts of making false entries.

Federal indictments were returned on February 4 and July 31, 1970. The four counts of the initial federal indictment dealt with the purchase of the Ranger Bar, a cocktail lounge. Three of these counts charged that McDaniel had violated 18 U.S.C. § 656 in that he had embezzled and misapplied $56,637.20 to finance the transaction by issuing cashier's checks from the bank in that amount without repaying the bank. The fourth count charged a violation of 18 U.S.C. § 1005, alleging that, to cover the issuance of the cashier's checks, McDaniel had made a false entry in the bank records showing as an asset a nonexistent deposit with another bank.

The seven counts of the second federal indictment dealt with miscellaneous schemes. In four counts, McDaniel was charged with embezzling and misapplying $44,716.90 by issuing two checks without repaying the bank, converting a third check to his personal use, and issuing a fourth on a fundless account, all in violation of § 656, *supra*. The final three counts ·alleged that McDaniel had further violated § 1005 by making three separate false entries of fictitious deposits by the bank to show assets to cover the sums embezzled.

McDaniel sought to have all state and federal ·indictments quashed on the ground that the Fifth Amendment precluded his prosecution for transactions touched upon by his immunized state grand jury testimony. The state court, Judge Coyne, accepted the argument that § 16–20–10 conferred transactional immunity and quashed the state indictment; but the federal court, Judge Register, declined to quash the federal indictments. Consequently, McDaniel was tried in federal court in two trials, convicted on all eleven counts, and sentenced to five years imprisonment on one conviction and concurrent terms of three and two years on the others.

McDaniel then appealed to this court, and at oral argument on that appeal the United States Attorney conceded that he had read McDaniel's state grand jury testimony on the evening of November 20, 1969. This court held that the United States Attorney's reading of McDaniel's state grand jury testimony "constitutes a prima facie 'use' " of it, and therefore, if that testimony was given under a grant of immunity, and if it related to the subject matter of the federal prosecutions, McDaniel could not be prosecuted for those transactions. United States v. McDaniel, *supra*. Accordingly, the cause was remanded to the district court for an evidentiary hearing to determine whether McDaniel had testified under a grant of immunity, 449 F.2d at 840, and, if so, whether the testimony related to the subject matter of the federal prosecution. 449 F.2d at 841.

After conducting the mandated evidentiary hearing, Judge Benson answered both propounded questions affirmatively and therefore, in accordance with his conception of our opinion, vacated the convictions and quashed the indictments. 352 F.Supp. 585.

However, Judge Benson's task at the evidentiary hearing was complicated by the intervening decision of the Supreme Court in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

This court's prior opinion in *McDaniel I*, authored by Judge Gibson, had interpreted the pre-*Kastigar* decisions of the Supreme Court to establish a double standard with respect to the constitutionality of statutes which grant immunity to witnesses in order to compel testimony. First, this court determined that Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), applied full transactional immunity when the federal government was both the questioning sovereign and the prosecuting sovereign, thereby preventing

federal prosecution for any crime relating to the subject matter of the compelled testimony. If, on the other hand, the questioning sovereign were the state, Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), governed, and the federal government was permitted to prosecute the witness for crimes related to his testimony, so long as there was no use of the compelled testimony or its fruits. Thus we ruled that, in interjurisdictional cases, the Fifth Amendment required no more than use and derivative use immunity, even while single jurisdictions were bound by full transactional immunity.

By means of this analysis, it was determined that under ordinary circumstances McDaniel would only be entitled to use immunity, since his grand jury testimony had been compelled by the state, and the federal government was acting as prosecutor. However, because the United States Attorney had read the three-volume transcript of McDaniel's testimony, our court felt forced to conclude that the federal government was in the same position as if it were the questioning sovereign, and that therefore transactional immunity applied. The only question then remaining was whether McDaniel had in fact testified before the state grand jury under a grant of immunity to matters related to the prosecution, and, as seen, that caused the remand.

In *Kastigar*, of course, the Supreme Court held that use and derivative use immunity is constitutionally sufficient to compel testimony over a claim of Fifth Amendment privilege even in cases in which the federal government is both questioner and prosecutor. Accordingly, at the evidentiary hearing in this case, the government sought to open a third issue by seeking to prove under the *Kastigar* guidelines that it had independent sources for the evidence it used to convict McDaniel. For this purpose, it offered into evidence F.B.I. reports based upon an investigation of McDaniel that had been received by the United

States Attorney's office prior to McDaniel's testimony. But McDaniel's counsel objected to this evidence on the ground that this court's mandate did not allow the trial court to explore that issue. The district court sustained this objection, and excluded the reports from evidence, admitting them only as an offer of proof. Nevertheless, in his memorandum dismissing the indictments, the district judge observed that could he apply *Kastigar* his result would differ:

> "On the basis of the government's offer of proof in the McDaniel evidentiary hearing, this Court finds that the government had, prior to the grand jury testimony, all the evidence used in the McDaniel prosecution, and further finds that evidence was derived from legitimate sources wholly independent of the compelled testimony. This evidence consists of comprehensive investigative Federal Bureau of Investigation reports. See Government's Offer of Proof, Exhibits 36–41 inclusive."

It is with this extensive and complicated factual background that we consider the government's three contentions on appeal: (1) that McDaniel's testimony was not given under a grant of immunity; (2) that the testimony did not relate to the subject matter of the federal prosecution; and, alternatively, (3) that the United States did not "use" that testimony to convict McDaniel.

■ First the government contests Judge Benson's conclusion of law that when McDaniel testified before the state grand jury pursuant to a subpoena, he was automatically granted immunity by § 16–20–10. The government's position tacitly concedes that, ordinarily, the statute automatically confers immunity on any witness subpoenaed to testify upon an investigation of violations of § 16–20–08, but contends that since McDaniel seized this opportunity to gain absolution of his wrongs, he waived the immunity. The essence of this argument is the contention that unless McDaniel first invoked the Fifth Amendment and then was told that § 16–20–10

granted him immunity, he was acting voluntarily and thus waived the statutory protection. But the Supreme Court has held precisely to the contrary in a case involving a federal statute worded similarly to § 16–20–10. *See* United States v. Monia, 317 U.S. 424, 430, 63 S.Ct. 409, 87 L.Ed. 376 (1943). *Accord,* State v. Hennessey, 195 Or. 355, 245 P. 2d 875, 881 (1952) (en banc). Furthermore, it is not contended that McDaniel lost the privilege as to any portion of his testimony by volunteering nonresponsive confessions in an attempt to acquire immunity for crimes not under inquiry. *Cf.* United States v. Wilmington Chemical Corp., 254 F.Supp. 92 (N.D. Ill.1966). Accordingly, we find no error in Judge Benson's conclusion that McDaniel's testimony was covered by a grant of immunity.

■ The government's second contention faults Judge Benson's finding of fact that McDaniel's testimony "related to" the federal prosecution. However, this inquiry, which was mandated by this court's earlier remand, is, in light of *Kastigar,* no longer germane. Because we held transactional immunity to be required by the Fifth Amendment, it was necessary under our earlier opinion to inquire whether the indictment had to be quashed on grounds that the testimony "related to" the transaction giving rise to the prosecution. But under *Kastigar,* that no longer is a basis for quashing the indictment. The question under *Kastigar* is not whether the testimony relates to the charges,[1] but whether the prosecution has "used" the testi-

mony in prosecuting those charges. It is to that dispositive question that we turn.

In writing for the Court in *Kastigar,* Mr. Justice Powell equated the protection provided by the statute in question with the protection provided by the Fifth Amendment and held that the

"statute provides a sweeping proscription of any use, direct or indirect, of the compelled testimony and any information derived therefrom . . . . This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures."

406 U.S. at 460, 92 S.Ct. at 1664. In order to enforce this prohibition of use of immunized testimony, the Court reaffirmed the rule of *Murphy*:

" 'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.'

This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

. . . . .

Taken as a whole, the 472 pages of grand jury testimony implicate McDaniel in every aspect of the various schemes. The insignificance appears only when a line or page is viewed as a complete unit."

We note that in support of this conclusion the trial court meticulously set out in its memorandum opinion each count of the two federal indictments, coupled with a summary of that portion of McDaniel's incriminating grand jury testimony which related to that count.

---

1. Even if the question were whether the testimony related to the federal charges, we think that the following finding by Judge Benson would not be clearly erroneous:

"After reading the entire grand jury transcript, it is this court's finding that the testimony as to various bank practices cannot discernably be separated from material incriminating to McDaniel. All counts are in some way connected to the shortage of $214,900 [which McDaniel explained to the grand jury].

\*   \*   \*   \*   \*   \*

. . . One . . . need only show that he testified under a grant of immunity in order to shift to the government the *heavy burden* of proving that all of the evidence it proposes to use was derived from legitimate, independent sources."

406 U.S. at 460, 92 S.Ct. at 1665 (citations omitted) (emphasis supplied).

■ Clearly, this test envisions, under ordinary circumstances, a pre-trial evidentiary hearing at which the government must discharge its "heavy burden" of proof; but both parties here contend such a hearing is unnecessary. The government says Judge Benson has already explored that contention and made a finding of fact that the government has carried its burden. Defendant contends that in the peculiar circumstances of this case it is impossible for the government to furnish the degree of proof *Kastigar* requires.

Judge Benson's finding that the evidence produced on the government's behalf at McDaniel's trial was derived from a source independent of McDaniel's state grand jury testimony was premised upon the court's careful examination of the government's offer of proof of the F.B.I. reports received by the United States Attorney prior to the commencement of the state grand jury proceedings.

■ We are free to consider the offer of proof as it is a part of the record before us, even though excluded from evidence by the trial judge. United States v. Agy, 374 F.2d 94, 95 (6th Cir. 1967); F. H. McGraw & Co. v. Milcor Steel Co., 149 F.2d 301 (2d Cir. 1945). *See* Rule 43(c), Fed.R.Civ.P.; 5 Moore's Federal Practice § 43.11, p. 1383 (2d ed. 1971).

■ We find, however, that even though the voluminous reports, which we have examined, may have afforded proof of an independent source of the evidence adduced at McDaniel's trial, such reports nevertheless fail to satisfy the government's burden of proving that the United States Attorney, who admittedly read McDaniel's grand jury testimony prior to the indictments, did not use it in some significant way short of introducing tainted evidence. *See* The Supreme Court, 1971 Term, 86 Harv.L. Rev. 181, 186 (1972); Note, Standards for Exclusion in Immunity Cases after Kastigar and Zicarelli, 82 Yale L.J. 171, 185, 186 (1972). Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.

*Kastigar*, after all, proscribed "any use, direct or indirect . . . ." And, indeed, if the immunity protection is to be coextensive with the Fifth Amendment privilege, as it must to be constitutionally sufficient, then it must forbid all prosecutorial use of the testimony, not merely that which results in the presentation of evidence before the jury.

The three volumes of transcript in which McDaniel fully confessed his misdeeds were read in their entirety by the United States Attorney three and eight months, respectively, before the two federal indictments were handed down. Furthermore, they were read when the United States Attorney was unaware that the testimony came pursuant to a grant of immunity, and he therefore could have perceived no reason to segregate McDaniel's testimony from his other sources of information. Under these circumstances, we are of the opinion that the government is confronted with an insurmountable task in discharging the heavy burden of proof imposed by *Kastigar*. In this regard, we note with interest that in United States v. Dornau, 359 F.Supp. 684 (S.D.N.Y.1973), District Judge Metzner recently arrived at a similar conclusion on strikingly similar facts, stating:

"[O]nce the subject matter was touched upon in the privileged testimony, and the prosecutor had read it, he could have used it in a variety of ways in this criminal prosecution.

The possibility of such use, and the impossibility of clearly showing that the use did not occur calls for the holding in this case that the defendants were denied the constitutional protection that their silence would have given them."

■ Because the trial court apparently failed to consider the immeasurable subjective effect of the prosecutor's reading of McDaniel's state grand jury testimony, we conclude that the court's finding that the government had fulfilled the burden of proof required by *Kastigar* cannot stand.

In so concluding, we cast no reflection upon the integrity or motives of the United States Attorney. To the contrary, he has demonstrated by his appearances in our court and the records of the trials in the district court that he is a prosecutor who adheres to the high professional standards of the legal profession and to the duties and responsibilities of a United States Attorney. But even so, the United States Attorney is subject to human frailties. Thus, although he asserts that he did not use McDaniel's testimony in any form, we cannot escape the conclusion that the testimony could not be wholly obliterated from the prosecutor's mind in his preparation and trial of the case. We agree with Judge Metzner that "[i]t is difficult for the court to speculate as to the effect that the reading of the minutes might have had on the conduct and thinking processes of the [prosecutor]." United States v. Dornau, *supra*.

We also deem it appropriate to observe that this appeal and the troublesome question presented derive from unusual circumstances. By reason of the principles promulgated in *Kastigar,* the problem at hand is not likely to reoccur with any degree of frequency. Ordinarily, the question whether the prosecutor has made any use, direct or indirect, of the compelled testimony can and should be fully explored by an appropriate hearing before trial. Here, as we have seen, the question was not ventilated un-

til after the trial. In sum, the unusual circumstances attending the controversy renders the government's burden of proof in this case virtually undischargeable. Another remand for yet another evidentiary hearing would be a futile gesture. Accordingly, the judgments vacating the convictions and dismissing the indictments are affirmed.