**UNITED STATES of America, Plaintiff,**

**v.**

**Victor POSNER, Defendant.**

**No. 82–352–Cr.**

United States District Court,
S.D. Florida,
Miami Division.

April 30, 1986.

K. Chris Todd, Asst. U.S. Atty., Neil Cartusciello, Asst. U.S. Atty., New York City, for plaintiff.

Edward Bennett Williams, Washington, D.C., for defendant.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR FOR OTHER RELIEF FOR GOVERNMENTAL INTRUSION INTO HIS ATTORNEY–CLIENT RELATIONSHIP

SPELLMAN, District Judge.

I

THIS CAUSE came before the Court on the Defendant's Victor Posner, Motion to

Dismiss the Indictment[1] or for other Relief for Governmental Intrusion into his Attorney-Client Relationship. This Court conducted an evidentiary hearing on the motion prior to the completion of briefing on the subject. The memoranda submitted by the parties subsequent to the hearing address Posner's central complaint: the Defendant claims that his right to effective assistance of counsel found in the Sixth Amendment to the United States Constitution was violated when government counsel spoke with Posner's former[2] co-defendant, William Scharrer, and Scharrer's former counsel.

## II

The factual scenario giving rise to the Defendant's motion is not complex. Victor Posner and William Scharrer were charged in a twelve count indictment with criminal violations of the federal income tax laws. Posner, his counsel, and Scharrer made arrangements whereby Posner would pay any attorney's fees incurred by Scharrer by separately retained counsel, Hugh Culverhouse, Jr., Esquire and his firm. At the onset of the litigation, Scharrer and Posner were scheduled to be tried together.

A joint defense was initially pursued by the Defendants in the sense that all attorneys for both Defendants worked as a team in most aspects, and a common set of facts was adopted by all counsel. Upon Posner's motion for severance, however, Posner was granted a separate trial on August 1, 1984.[3] Scharrer proceeded to trial. Posner's attorneys, Edward Bennett Williams, Richard Cooper and Mary Clark, continued to consult with and assist Scharrer's attorneys, Culverhouse and Nathan Clark, throughout the remainder of Scharrer's trial.

On August 10, 1984, a jury found Scharrer guilty of the four counts charged against him. Shortly thereafter, Scharrer retained new counsel—all files were ordered to be turned over to Atlee Wampler, III, for all further proceedings.

Scharrer then filed a post-trial Motion for a Judgment of Acquittal, Arrest of Judgment or New Trial. Serious allegations were made by Scharrer concerning the adequacy of Culverhouse's representation of him at trial. The Court denied the government's request to deny Scharrer's motion without a hearing. Because of the gravity of Scharrer's claims, the Court scheduled a hearing for January 3, 1985.

After Scharrer's motion was filed but prior to the scheduling of the hearing, Culverhouse contacted the government's attorneys, Special Assistant United States Attorneys K. Chris Todd and Neil Cartusciello. Culverhouse offered to provide them with an affidavit in opposition to Scharrer's motion and the allegations contained therein. Todd and Cartusciello declined the offer at that time.

Once the Court denied their request to deny the motion without a hearing and scheduled a hearing, the government's interest in communicating with Culverhouse naturally increased.

Although it is uncertain who called whom, Culverhouse spoke with the government attorneys and Revenue Agent Lawrence Leicht on December 21, 1984, shortly before the hearing was to take place. During that conversation, the central areas of discussion were: the fee arrangement between Scharrer, Posner and their respective counsel; tactical reasons for not offering certain evidence at trial; and, Culver-

---

1. The Defendant no longer seeks to dismiss the indictment; only disqualification of the government's present attorneys and suppression of evidence alleged to have been improperly procurred are presently requested by Posner.

2. On August 1, 1984, Posner's Motion for Severance was granted. Posner is scheduled for trial on June 23, 1986.

3. The basis for the severance was later challenged by the government and affirmed. *See United States v. Posner*, 594 F.Supp. 923 (S.D. Fla.1984), *aff'd, United States v. Posner*, 764 F.2d 1535 (11th Cir.1985). This Courts' rejection of Posner's claim of double jeopardy arising from the severance was likewise affirmed. *United States v. Posner*, 780 F.2d 1536 (11th Cir.1986).

house's opinion on the strengths and weaknesses of certain pieces of evidence.

On January 2, 1985, another meeting was conducted. Mr. Clark, Culverhouse's associate, Clark's attorney, E. David Rosen, and an associate from his firm were present. Also in attendance were Todd, Cartusciello, Wampler and Leicht. At this interview, the topics discussed with Clark were basically the same as those previously discussed with Culverhouse. The government had an obvious interest in certain aspects of Culverhouse's representation of Scharrer since it had to defend against Scharrer's post-trial motion.

The January 3 hearing was continued until the next day in order to give the government an opportunity to review certain documents it had requested from Scharrer by subpoena duces tecum. Later, on the night of the 3rd, the government attorneys met with Thomas Purcell, a partner at Culverhouse's firm. Once more the subjects of discussion were the fee arrangements and Scharrer's allegations concerning Culverhouse's tactical decisions at trial. The government also spoke again briefly with Culverhouse. None of these meetings was on the record.

By letter dated January 9, 1985 to Todd and Cartiscello, Posner's attorneys asserted that continued contact with Scharrer's former counsel would result in violation of Posner's joint defense privileges and that no further contact should take place. The government did not accede to this demand.

Thereafter, one more meeting took place between the government and Culverhouse, prior to the hearing on the post-trial motion. The same issues were discussed as before.

Counsel for Posner has characterized the conversations between the government and Scharrer's former counsel to include the following:

(1) The strengths and weaknesses of various potential expert witnesses for the defense, including those who testified at the Scharrer-Posner trial and those who did not but are potential witnesses at a second trial of Mr. Posner;

(2) The reasons why certain documents were not offered in evidence by the defense at the Scharrer-Posner trial, which reasons are potentially relevant to defense strategy at a second trial of Mr. Posner;

(3) Defense theories about whether or not to call certain fact witnesses to testify at the Scharrer-Posner trial;

(4) Defense considerations with respect to the advantages and disadvantages of bringing out at trial the long history of the governmental misconduct in this case;

(5) Communications between and among Mr. Posner, Mr. Scharrer, and their respective counsel during trial preparation; and,

(6) Defense strategies with respect to jury selection.

Assuming, without deciding, that the areas of inquiry pursued by the government are accurately described, the Court still finds that the government did not violate any rights or privileges presumed by Posner.

### III

Any discussion of the applicable law must be prefaced with the observation that no case mentioned by either side or discovered in the course of the Court's research is factually similar enough to the instant case to provide the Court with meaningful guidance. The facts of this case, while not complex, are not what could be described as "run of the mill". Posner has claimed that "the Government has violated [his] attorney client relationship". It is this Court's opinion that the government's "intrusion" does not rise to a constitutional level.

There can be no question that "an intrusion upon the confidential relationship between a criminal defendant and his attorney, either through surreptitious electronic means or through an informant, is a violation of the Sixth Amendment right to counsel." *United States v. Zarzour,* 432 F.2d 1, 3 (5th Cir.1970). Since the decision in

*Zarzour* was handed down, though, a criminal defendant's right to counsel has suffered many qualifying limitations. It is not an absolute right by any means. Courts no longer apply a simplistic approach which looks to see if there has been *any* intrusion, and if there has been, requires sanctions against the government. Rather, the Court determines whether the government has "stooped to conduct well below the line of acceptability." *United States v. Rosner*, 485 F.2d 1213, 1227 (2nd Cir.1973).

■ This determination of unacceptable conduct is not restricted to those cases wherein the government employed electronic devices to gain access to confidential information, such as in *Coplon v. United States*, 191 F.2d 749 (D.C.Cir.1951). But, in following the trend towards less restrictive access to information, the Supreme Court has questioned, in dicta, any theory that suggests that "the same right-to-counsel standard for government interception of attorney-client communications by an undercover agent as for interception by electronic surveillance" was established under *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) or its progeny. *See Weatherford v. Bursey*, 429 U.S. 545, 554 n. 4, 97 S.Ct. 837, 843 n. 4, 51 L.Ed.2d 30 (1976). This distinction, though not particularly applicable to the instant case, serves to illustrate the point that courts must look to the totality of the circumstances under which the government learned of the information.

■ Additionally, it is clear from the Supreme Court's analysis in *Weatherford* that there are levels of intrusiveness, and not all the levels rise to a violative status. Thus, if the government's intrusion does not signify "avowed corrupting conduct ... the rule must, of necessity, be different." *Rosner*, 485 F.2d at 1227 (citation omitted). In those cases where there has been no glaring governmental intrusion, "the matter must then proceed to an ultimate adjudication of whether the defendant was prejudiced in fact." *Id.* at 1227–28. In the instant case, this Courts finds no egregious

or shocking intrusion by the government into Posner's attorney-client relationship.

It is necessary therefore, for the Court to next inquire whether Posner has been, or may be, prejudiced by the government's gained information.

■ It is the finding of the Court in this case that no prejudice has been shown and no action by the Court is necessary to be taken. In the instant case, the Court conducted a lengthy hearing and was privy to the government's notes from the meetings. As required by *United States v. Melvin*, 650 F.2d 641, 644 (5th Cir.1981), the Court had to ascertain vis-a-vis the hearing whether Posner's defense was subject to prejudice or potential prejudice at re-trial. After a thorough review of the record, the Court finds that no prejudice, nor the threat of prejudice, has, or will, inure to the Defendant as a result of the government's communications with Scharrer or his counsel. The information received by the government was neither novel nor important. Not intending to demean the value of the meetings, the information relayed to Todd and Cartusciello appears innocuous at the least and repetitive at the most.

The Supreme Court in *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1980) identified and refined the courts' task in cases of potential government intrusion:

Our approach has been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.

449 U.S. at 365, 101 S.Ct. at 668.

In *Morrison*, as in the instant case, the defendant sought the dismissal of the in-

460

dictment against him (although Posner has since dropped that request). The case is instructive in one way in particular, that is, where the defendant "has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of [his] counsel to provide adequate representation in these criminal proceedings," no action by the court is necessary. *Id.* at 366, 101 S.Ct. at 669.

To be sure, there are examples of governmental intrusions that warrant court intervention. *See United States v. McDaniel,* 482 F.2d 305 (8th Cir.1973). There are cases to the contrary as well wherein the defendant is not absolutely insulated from the government's right to certain communications. *See United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983), *cert. denied,* 104 S.Ct. 275, 464 U.S. 914, 78 L.Ed.2d 256 (1983). Due to the total lack of prejudice, real or potential, in the instant case, these cases are not applicable.

## IV

Based on the above and foregoing, it is the finding of the Court that the government attorneys did not impermissibly intrude on Victor Posner's attorney-client relationship. There exists no threat of prejudice, real or potential, against Posner at the time of re-trial. Mr. Posner's right to effective counsel under the Sixth Amendment has not been violated or in any way disturbed.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Victor Posner's Motion to Dismiss the Indictment or for other Relief for Governmental Intrusion into his Attorney-Client Relationship is DENIED.