Fremont-Smith, J.
On August 31, 1995, the grand jurors for Suffolk County returned multiple count indictments against the defendant, who is a Boston police officer. The indictments charged the defendant with extortion (24 counts), bribery (24 counts), larceny from the person (21 counts), and attempted larceny from the person (3 counts). The case is before the Court on the defendant’s motions to dismiss and suppress. After a two-day evidentiary hearing, the Court, based on the credible evidence, makes the following findings, rulings and order.
On May 9, 1994, a motorist, Francis Viens, was stopped by a uniformed police officer of the Boston Police Department in the vicinity of Huntington Avenue and Parker Hill Avenue in Roxbury. Viens reported to the Boston Police Department that the officer told him that he had been stopped because his motor vehicle had an expired registration and that the officer demanded twenty-five dollars in exchange for not towing Viens’ vehicle. After Viens paid the money to the officer, he was allowed to drive home. Although his automobile was not towed, Viens received a motor vehicle citation from the officer, which was signed “J. Marotta,” and bore the defendant’s Boston Police Department identification number, “1493.”
After Viens, on May 10, 1994, contacted the Boston Police Department (Area B-2 police station) and reported the incident, on May 11, 1994, he spoke to a sergeant (John O’Malley) and again described the incident and identified the officer who initiated the stop and who issued the citation as “Officer Marotta.” The sergeant memorialized his conversation with Viens, including the identification of Marotta that he received from Viens, in a report written the same day. After the conversation, the sergeant retrieved the Department’s copy of the citation issued to Viens, which was similarly signed “J. Marotta” and bore the identification number “1493.” On May 18, 1994, Viens went to Area B-2 and filed a formal, written complaint (Form 1920) against the defendant, which stated that the officer who stopped him and took twenly-five dollars from him was “PO Marotta.”
On or about May 18, 1994, Detective A1 Goslin of the Internal Affairs Division called Lieutenant Detective Paul Farrahar of the Anti-Corruption Division and told Farrahar about the Viens complaint. Farrahar was asked if he wished to pursue a criminal investigation, but declined and recommended that Goslin’s unit handle the complaint administratively.
On May 26, 1994, a captain in the Internal Affairs division sent a “Carney Form” to the defendant ordering that the defendant submit a report about the incident, but also advising him that a report would not be required if he invoked the privilege against self-incrimination and that, if a report was filed, it would not be used against him in any criminal proceedings, but that he could be prosecuted based on other evidence, i.e., he would be provided with “use immunity” with respect to the report. On June 10, 1994, the defendant submitted a report (From 26) about the incident in which he stated that he had stopped and cited Viens on May 9, 1994, but that he had not demanded or taken money from Viens.
On September 18, 1994, Allan Jacques filed a second complaint concerning the defendant. In his complaint, Jacques reported that the defendant had demanded and taken $125 from him when the defendant had stopped and cited him earlier that day, which he paid to avoid arrest. Jacques also produced a copy of the citation he had received from the defendant which, like the Viens citation, bore the defendant’s name and identification number.
On learning about the September 18,1994 “Jacques” complaint, Farrahar told Goslin that the Anti-Corruption division would, after all, investigate the complaints for possible criminal violations, and that Internal Affairs should cease its investigation. Between September 20, 1994 and May 8, 1995, members of the Anti-Corruption Division independently investigated the complaints. Viens was re-interviewed, Jacques and a passenger in his vehicle were interviewed and thirty motorists whose license plates, according to the computer in defendant’s cruiser, had been scrutinized by the defendant during September, 1994, were contacted by Anti-Corruption Division investigators.
In light of the fact that this investigation produced no additional allegations of wrongdoing, Farrahar decided on or about May 8, 1995, to discontinue the criminal investigation and to forward the file to the Police Commissioner for administrative proceedings. For the first time, Farrahar requested and received the Internal Affairs Division’s Veins file (including the defendant’s “Carney” response) for the purpose of ensuring that all documents relating to the investiga *308 tion of Marotta would be made available to the Police Commissioner for administrative adjudication.
On May 29, 1995, however, a third complaint against the defendant was made by David and Misa Gonzales, the elderly parents of a Boston police officer. When Farrahar learned about the third complaint, he again requested cessation of the administrative proceedings and reopened the criminal investigation. Over 600 traffic citation forms written by Marotta were then retrieved from the Department’s files and over 300 motorists who received them were located and interviewed. This investigation uncovered twenty-two additional motorists who alleged that the defendant had demanded and taken, or had attempted to take, money from them. Each identified the citations given them bearing Marotta’s name and identification number. Evidence pertaining to the latter allegations, as well as the allegations of Viens and Jacques, was presented to a Suffolk County grand jury during July and August, 1995. All of the motorists whose testimony resulted in indictments had been given citations which bore the defendant’s name and identification number. During the period of time that the citations were issued (January, 1994 to June, 1995), moreover, the defendant was the only officer in Area B who exclusively enforced traffic violations in that area, and was the only officer named Marotta assigned to that area or with the identification number 1493.
In Kastigar v. United States, 406 U.S. 441 (1972), rev. denied, 408 U.S. 931 (1972), the Supreme Court established the principles to be applied when the government seeks an indictment and trial of a person previously granted use immunity with regard to his compelled sworn testimony. In Kastigar, the Court stated: “Once a defendant demonstrates that he has testified, under a . . . grant of immuniiy, to matters related to the .. . prosecution, the ... authorities have the burden of showing that their evidence is not tainted by establishing that they have an independent, legitimate source for the disputed evidence.” Kastigar, 406 U.S. at 460, citing Murphy v. Waterfront Commission, 378 U.S. 52, 79, n. 18 (1964). The burden of proof “imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.” Kastigar, 406 U.S. at 460. However, the Court also stated that the Fifth Amendment “grants neither pardon nor amnesty" to those who testify under a grant of immunity. Id.Id. Kastigar at 461. Rather, the Fifth Amendment allows the government to prosecute so long as it uses evidence derived entirely from independent sources.
The Court concludes in this case that the Commonwealth has sustained its burden of proof that the identity of the police officer was established beyond any reasonable doubt by legitimate sources wholly independent from' defendant’s “Carney” statement, with respect to all of the alleged shake-downs, including that of Viens. Even with respect to Viens, by May 18, 1994, before Marotta submitted his June 10 “Carney” report, the Boston Police Department had conclusive evidence identifying the defendant as the officer who had allegedly extorted money from him. For instance, Sergeant O’Malley testified without contradiction that, during the period in question, the defendant was the only officer in Area B whose exclusive duties were enforcement of traffic regulations and was the only officer of that name in the area; the citation issued to Viens on May 9, 1994, bears the name and officer identification number of the defendant; in the May 11, 1994 call by Viens to Sergeant O’Malley, Viens stated that the police officer who stopped him was “Officer Marotta”; the Department copy of the citation to Viens, reviewed by O’Malley on May 11, 1994, after he had talked to Viens, contained defendant’s identification number and the name of the defendant; and the Form 1920 filed by Viens on May 18, 1994 similarly identified the officer who stopped him as “PO Marotta.” Thus, even before the defendant invoked his Fifth Amendment rights, and submitted the June 10, 1994 report in which he acknowledged that he was the officer who had stopped Viens, there was no question that Marotta was the officer involved.
Moreover, the investigators from the Anti-Corruption Division did not possess or even have access to the defendant’s “Carney” response until after their investigation into the Viens and Jacques complaints which occurred between September 18, 1994 and May 8, 1995, during which period, Anti-Corruption investigators independently interviewed Viens, Jacques, a passenger in Jacques’ cab, and thirty motorists stopped by the defendant during September, 1994. Moreover, Anti-Corruption investigators, rather than Internal Affairs, interviewed Jacques and subsequent complainants, and the defendant filed no report in response to the allegations concerning Jacques or the subsequent complaints.[1]
Defendant cites United States v. North, 910 F.2d 843 (D.C. Cir. 1990), for the proposition that presentation to the grand jury of “tainted” evidence obtained in violation of a grant of immunity should result in a dismissal of the indictment, even if it was used in a non-evidentiary capacity, i.e., merely to refresh memory of a witness, to focus the investigation to the exclusion of other suspects, to initiate prosecution or to interpret evidence. The appropriate remedy for non-evidentiary use of immunized testimony is, it should be noted, a matter of dispute among the various federal circuits. Compare United States v. McDaniel, 482 F.2d 305, 311 (8th Cir. 1973) (forbidding all prosecutorial use of the testimony, not merely that which resulted in presentation of the evidence before the jury), and United States v. Hinton, 543 F.2d 1002, 1008-09 (2d Cir. 1976), cert denied, 429 U.S. 980 (1976), with United States v. Serrano, 870 F.2d 1, 16 (1st Cir. 1989), and United States v. Zielezinski, 740 F.2d 727, 729 (9th Cir. 1984).
*309 In Serrano, the First Circuit Court of Appeals stated that the approach taken by the Eight Circuit in McDaniel, amounts to a rule that would “in effect grant a defendant transactional immunity once it is shown that government attorneys or investigators involved in the prosecution were exposed to the immunized testimony.” Serrano, 870 F.2d at 17 (emphasis in original). Because Kastigar expressly states that a grant of immunity short of transactional immunity can still be constitutional if the grant is coextensive with the Fifth Amendment, the First Circuit “[did] not think this purpose is automatically frustrated by the government’s mere exposure to immunized testimony.” Id. The court rejected the notion that all non-evidentiary use necessarily violates the Fifth Amendment or that the “purpose [of the Fifth Amendment] is automatically frustrated by mere exposure to immunized testimony.” Id. at 17-18. See also United States v. Byrd, 765 F.2d 1524, 1530-31, (11th Cir. 1985). The Court added: “We agree with the Second Circuit that a prosecutor is not foreclosed merely because the ‘immunized testimony’ might have tangentially influenced the prosecutor’s thought process in preparing for the indictments and preparing for trial,” citing United States v. Mariani, 851 F.2d 595 (2nd Cir. 1988). Thus, the First Circuit does not consider the non-evidentiary or tangential use of immunized testimony to be grounds for dismissal.
In any event, the Court finds here that no statements of the defendant were ever used, directly or indirectly, during the Anti-Corruption Division’s investigation or during the grand jury proceedings, even to focus the investigation, to refresh memory, to initiate prosecution, or to interpret evidence, as there was never any question, before or after June 10, 1994, as to the officer’s identify. Moreover, the initial criminal investigation between September 18,1994 and May 8, 1995 was conducted entirely without access to any Internal Affairs files or documents and, on May 29, 1995, the criminal investigation resumed only after a third complaint independently identified the defendant as shaking down motorists. Although a copy of the defendant’s Internal Affairs Division file, including defendant’s “Carney” report, remained in the Anti-Corruption files from May 8, 1995 onward, all further complaints independently identified the defendant as the officer involved, both by name and identification number, on the citation which was issued to each of them. The grand jury minutes and exhibits unmistakably indicate that the investigators and the twenty-one motorists who testified before the grand jury identified the defendant solely by means of the citations which had been handed to each of the motorists, and that the complainants identified the defendant without any reference to, reliance upon, or even knowledge of his “Carney” response to the Viens complaint.[2] The Commonwealth, therefore, has demonstrated beyond a reasonable doubt that the evidence used in the investigation and indictment of the defendant came wholly from legitimate, untainted sources.
ORDER
For the foregoing reasons, the defendant’s motions are denied.

Defendant did not testify at the hearing, and the testimony of Lieutenant Farrahar and Detective Goslin directly contradicted the defendant’s affidavit that, “to the best of his recollection,” he was asked to submit and did submit a “Carney” report concerning the Jacques complaint, no copy of which could be located by either the defendant or the Department. The Court finds that no such report was ever filed by the defendant.

Each of the complainants were threatened, explicitly or implicitly, with arrest and/or impoundment and towing of their car unless they paid cash to the defendant. They were then handed a citation identifying, by name and identification number, Marotta as the officer. On those rare occasions when a motorist demanded a court hearing rather than paid the fine, Marotta failed to appear in court and the charges were dropped.