**STATE of Minnesota, Appellant,**

v.

**Shelly Ann GAULT, Peter Stuart Zielke, Respondents.**

No. C2–95–2482.

Court of Appeals of Minnesota.

July 9, 1996.

Review Granted Sept. 20, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Surrell Brady, Minneapolis City Attorney, Timothy T. Mulrooney, Assistant City Attorney, Minneapolis, for Appellant.

James M. Ventura, Wayzata, Heidi M. Schmid, Long Lake, for Respondent Gault.

Peter A. Cahill, Theresa R. White, Wayzata, for Respondent Zielke.

Edward N. Mansur, Lawrence A. Thomas, Mansur and O'Leary, P.A., St. Paul, for Amicus Curiae Minnesota Police and Peace Officers Association.

William J. Johnson, General Counsel, Washington, D.C., Amicus Curiae National Association of Police Organizations, Inc.

Considered and decided by DAVIES, P.J., and HARTEN and WILLIS, JJ.

## OPINION

WILLIS, Judge.

The State of Minnesota appeals from the district court's order dismissing misdemeanor complaints against respondents and suppressing evidence. The district court ruled that the state failed to meet its burden of showing that the prosecution and the evidence were not tainted by the use or derivative use of respondents' compelled self-incriminatory statements. The state also appeals from the district court's dismissal of the complaints in the interests of justice under Minn.Stat. § 631.21.

## FACTS

This case arises from an incident that allegedly occurred at the Hennepin County Detention Center. Respondents Shelly Ann Gault and Peter Stuart Zielke, who are both sheriff's deputies, allegedly assaulted an inmate. Deputy Bonnie Reamer witnessed the incident, reported it to her supervisors, and completed a written report the same day. Three days after the alleged incident, the Internal Affairs Unit of the Hennepin County Sheriff's Department took statements from several witnesses, including deputies Reamer, Gault, and Zielke. Before giving their statements, the deputies signed an advisory that informed each of them that failure to answer questions could result in termination of employment. The state does not contest that these were the type of statements commonly referred to as *Garrity* statements.[1]

---

1. *See Garrity v. State of New Jersey,* 385 U.S. 493,      87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (holding that

Three to four months after the alleged assault, the sheriff's department forwarded its investigative file to the Minneapolis City Attorney's Office. William Korn, an assistant city attorney, reviewed the entire file, including respondents' *Garrity* statements, and filed a misdemeanor complaint against each respondent. The city attorney's office then assigned the file to assistant city attorney Gretchen Cox. She gave the file to deputy city attorney Henry Martinez to review. Martinez's job included the determination of whether a case should proceed to trial. Martinez recognized the nature of Gault and Zielke's statements and ordered them removed from the file and sealed. Martinez advised Cox to refrain from speaking with anyone regarding the case and directed that the case be reassigned. After Martinez reviewed the file, he discussed the case with Cox, Korn, city attorney Surrell Brady, and assistant city attorney Karen Herland. After Martinez removed Cox from the case, it was assigned to Herland, who had not seen Gault and Zielke's *Garrity* statements or any reports referring directly to those statements. Herland then discussed the merits of the case with Martinez.

The district court joined the charges against Gault and Zielke for trial and denied Gault's motion for a speedy trial. At a second hearing, Gault and Zielke moved (1) to dismiss the complaints because they were tainted by the prosecutor's possible exposure to the *Garrity* statements and (2) to suppress testimony of 12 witnesses who may have been exposed to the *Garrity* statements. Gault moved for dismissal for violation of her right to a speedy trial. Gault and Zielke also made motions regarding discovery violations, disqualification of the ·city attorney, lack of probable cause, preclusion of expert testimony, and permitting the jury to view the scene of the alleged crime.

The district court dismissed the complaints, reasoning that the state failed to show that the complaints were not based on the use of Gault and Zielke's *Garrity* state-

ments or that any such use was harmless. The court suppressed the testimony of the 12 challenged witnesses, ruling that the state failed to show that the witnesses were "free from the taint of the use of these defendants' *Garrity* statements," or that any such use was harmless. The court also dismissed the complaints on its own motion in the interests of justice under Minn.Stat. § 631.21. The court cited 13 factors that it found, taken as a whole, "indicate that dismissal is in the best interests of justice." Finally, the district court denied as moot Gault's motion to dismiss for violation of her right to a speedy trial.[2]

### ISSUES

1. Did the district court err by suppressing testimony on the ground that the state failed to show that the witnesses were not tainted by Gault and Zielke's *Garrity* statements?

2. Did the district court err by dismissing the complaints on the ground that the state failed to show that the sheriff's department and the city attorney's office did not use Gault and Zielke's *Garrity* statements in the investigation or prosecution of this case?

3. Can the state appeal the district court's order dismissing the complaints in the interests of justice under Minn.Stat. § 631.21 (1994)?

4. Can respondent Gault challenge in this appeal the district court's order denying her motion for a speedy trial, although she did not file a notice of cross-appeal with this court?

### ANALYSIS

#### I.

In *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964), the Supreme Court held that "compelled testimony and its fruits cannot be used in any manner * * * in connection with a criminal prosecution." In *Murphy*, the

---

the Fourteenth Amendment protection against coerced statements "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office").

2. The district court either denied or refused to decide Gault and Zielke's remaining motions, none of which is at issue in this appeal.

Court explained that the rule leaves the witness and the government "in substantially the same position as if the witness had claimed his privilege" against self-incrimination. *Id.,* 378 U.S. at 79, 84 S.Ct. at 1610.

In *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967), the Court held that the Fourteenth Amendment protection against coerced statements "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." The court reasoned that statements given by police officers when faced with either incriminating themselves or losing their jobs were not voluntary, but rather were coerced statements. *Id.* at 497–98, 87 S.Ct. at 618–19.

In *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), the Court held that the constitutional privilege against self-incrimination prohibits "prosecutorial authorities from using * * * compelled testimony in *any* respect." The Court in *Kastigar* explained that use and derivative use immunity is coextensive with the constitutional privilege, but the Constitution does not require a broader grant of transactional immunity, which would prohibit entirely the prosecution of a person for the offense to which his or her compelled statement relates. *Id.* The constitutional prohibition against use and derivative use of compelled statements

> provides a comprehensive safeguard, barring the use of compelled testimony as an "investigatory lead," and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.

*Id.* at 460, 92 S.Ct. at 1664–65 (footnote omitted).

■ After a defendant has shown that he or she has been compelled to give a statement, the state has an "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.,* 406 U.S. at 460, 92 S.Ct. at 1665. The state's burden "is not limited to a negation of taint." *Id.* In determining if the state has met its burden, the district court must inquire into the *content* as well as the *sources* of the * * * witnesses' testimony. That inquiry must proceed witness-by-witness; if necessary, it will proceed line-by-line and item-by-item. For each * * * witness, the prosecution must show by a preponderance of the evidence that no use whatsoever was made of any of the [privileged statements] either by the witness or by the [prosecutor] in questioning the witness.

*United States v. North,* 910 F.2d 843, 872 (D.C.Cir.1990), *modified on other grounds,* 920 F.2d 940 (D.C.Cir.1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

■ In this case, the district court suppressed the testimony of 12 witnesses. The court reasoned that the state did not meet its burden of showing that the witnesses had not been tainted by Gault and Zielke's *Garrity* statements. The district court correctly pointed out that the record is devoid of testimony by any of the 12 witnesses as to the source or content of the information about which they would testify at trial. The record does not indicate if the witnesses were present when Gault and Zielke gave their *Garrity* statements. The record contains only the documents received into evidence and an affidavit from assistant city attorney Herland, which states only that three of the subject witnesses told her that they had neither seen nor been exposed to the *Garrity* statements. As the district court points out, the record contains no evidence regarding possible indirect exposure of the witnesses to the *Garrity* statements. The district court also correctly indicates that the record does not identify documents to which the witnesses were exposed. They may have been exposed to documents that summarized Gault and Zielke's *Garrity* statements or referred to their contents. The record suggests that such documents may exist in the form of a "final findings report" prepared by the internal affairs unit of the sheriff's office. Finally, the record contains no evidence regarding the location of the *Garrity* statements during the three- to four-month period before they surfaced at the city attorney's office.

■ The state argues at length that Deputy Reamer's testimony in particular should not be suppressed. The state argues that because Reamer completed her written report of the incident before Gault and Zielke made their *Garrity* statements, she should be able to testify about the contents of her written report. The record does not show, however, that Reamer was not exposed indirectly to the *Garrity* statements. The state suggests that the court should have required Reamer to testify at trial, out of the presence of the jury, so that the court could determine if her testimony was influenced by the *Garrity* statements. The district court, however, specifically gave the state an opportunity to present its witnesses at the pretrial hearing, which is an appropriate option according to federal case law. *See North*, 910 F.2d at 854 ("[A] trial court may hold a *Kastigar* hearing pre-trial, post-trial, mid-trial * * *, or it may employ some combination of these methods. A pre-trial hearing is the most common choice."); *United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir.1973) (stating that the *Kastigar* test "envisions, under ordinary circumstances, a pre-trial hearing at which the government must discharge its 'heavy burden' of proof").

Because the state did not meet its burden of affirmatively proving that the "evidence it proposes to use is derived from a legitimate source wholly independent of the compelled [statement]," the district court did not err in suppressing the testimony. *See Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665.

## II.

■ The district court dismissed the complaints on the ground that the state failed to show that the complaints were not based on an unconstitutional use of Gault and Zielke's *Garrity* statements. The state argues that any use of the *Garrity* statements in formulating the complaint or preparing trial strategy was a nonevidentiary use that does not violate the privilege against self-incrimination. The issue of whether the privilege prohibits nonevidentiary uses of compelled statements has caused a split in the federal circuits and is a question of first impression for Minnesota state appellate courts.

The district court based its decision on the Eighth Circuit's decision in *McDaniel*. In *McDaniel*, the Eighth Circuit held that the privilege against self-incrimination prohibits "all prosecutorial use" of coerced statements, "not merely that which results in the presentation of evidence before the jury." 482 F.2d at 311. The court held that even though there may have been an independent source of the prosecution's evidence, the government failed to meet its burden of proof. *Id.* The court held that the government could not show that the prosecutor, who had read McDaniel's compelled testimony prior to issuing indictments, "did not use it in some significant way short of introducing tainted evidence." *Id.* The court explained that

[s]uch use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.

*Id.* The court concluded that

although he asserts that he did not use McDaniel's testimony in any form, we cannot escape the conclusion that the testimony could not be wholly obliterated from the prosecutor's mind in his preparation and trial of the case.

*Id.* at 312; *accord United States v. Semkiw*, 712 F.2d 891, 895 (3d Cir.1983); *United States v. Pantone*, 634 F.2d 716, 719 (3d Cir.1980); *United States v. First W. State Bank of Minot, N.D.*, 491 F.2d 780, 787–88 (8th Cir.1974), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974).

Other federal circuit courts have held that *Kastigar* does not prohibit nonevidentiary use of compelled statements. *See United States v. Velasco*, 953 F.2d 1467, 1474 (7th Cir.1992); *United States v. Serrano*, 870 F.2d 1, 17–18 (1st Cir.1989); *United States v. Mariani*, 851 F.2d 595, 600–01 (2d Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989); *United States v. Crowson*, 828 F.2d 1427, 1431–32 (9th Cir. 1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Byrd*, 765 F.2d 1524, 1528–31 (11th Cir.1985). These courts have rejected *McDaniel* and have adopted

the position * * * that the mere tangential influence that privileged information may have on the prosecutor's thought process in preparing for trial is not an impermissible 'use' of that information.

*Velasco,* 953 F.2d at 1474.

We find that the *McDaniel* holding better comports with *Kastigar* than the decisions rejecting the *McDaniel* analysis. In *Kastigar,* the Supreme Court reasoned that the federal immunity statute was coextensive with the privilege against self-incrimination because the statute

> prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

406 U.S. at 453, 92 S.Ct. at 1661. If courts were to allow a prosecutor to use a defendant's compelled statement in deciding whether to prosecute or in formulating a criminal complaint against the defendant, the compelled statement could "lead to the infliction of criminal penalties" on the person compelled to give the statement. *See id.,* 406 U.S. at 453, 92 S.Ct. at 1661. We hold that such use by a prosecutor violates a defendant's privilege against self-incrimination.

■ In this case, assistant city attorney Korn read Gault and Zielke's *Garrity* statements before deciding to issue the complaints. He further testified that in making his charging decision he relied "primarily" on Deputy Reamer's written statement, which she prepared before Gault and Zielke gave their *Garrity* statements. Korn did not, however, testify that he did not use Gault and Zielke's *Garrity* statements in any way. Even if he had done so, the state is faced with the "virtually undischargeable" burden of proving that Korn did not use the *Garrity* statements "in some significant way short of introducing tainted evidence." *See McDaniel,* 482 F.2d at 311–12. Further, assistant city attorney Herland, who was to prosecute the case in district court, testified that she discussed the merits of the case with deputy city attorney Martinez, who had read Gault and Zielke's *Garrity* statements. Korn also testified that he discussed the merits of the case with Herland. It is possible, therefore, that Herland was exposed indirectly to material contained in the *Garrity* statement through her discussions of the merits of the case with Martinez and Korn.

We conclude that the record does not show that the state met its burden of affirmatively proving that it did not use the compelled statements "*in any respect*" that could "lead to the infliction of criminal penalties" on Gault and Zielke. *See Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661.

## III.

■ The state challenges the district court's order dismissing the complaints in the interests of justice under Minn.Stat. § 631.21 (1994). Gault and Zielke argue that Minn. R.Crim. P. 28.04, subd. 1(1), precludes the state from appealing that part of the district court's order that is based on section 631.21. Rule 28.04, subd. 1, states:

> **Right of Appeal.** The prosecuting attorney may appeal as of right to the Court of Appeals:
>
> (1) in any case, from any pretrial order of the trial court except an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense or an order dismissing a complaint pursuant to Minnesota Statutes section 631.21.

The exceptions to the general rule that a prosecutor may appeal pretrial orders are " 'situations in which the prosecuting authority does not need the right of appeal since it may reinstate its case by other means.' " *State v. Shaw,* 264 N.W.2d 397, 398 (Minn. 1978) (quoting Minn. R. Crim P. 29.03 cmt). When a district court dismisses a complaint in the interests of justice, "[t]he state's remedy is not an appeal but to either reissue the amended complaint or try to get the court to reconsider its decision." *State v. Fleck,* 269 N.W.2d 736, 737 (Minn.1978).

This court has interpreted Rule 28.04 "as allowing appeals from pretrial dismissal orders where the dismissal effectively prevents further prosecution." *City of W. St. Paul v. Banning,* 409 N.W.2d 530, 531 (Minn.App. 1987). In *State v. Hendrickson,* 395 N.W.2d 458, 461 (Minn.App.1986), the court held that

the state could not appeal a dismissal order under section 631.21 where the state had available "a competent witness to [the defendant]'s conduct." The court reasoned that the state "still has evidence with which to recharge" and that "[t]he dismissal does not effectively prevent further prosecution by making reissuing the complaint pointless." *Id.*

In this case, the court dismissed the complaints in the interests of justice and set forth detailed reasons for the dismissal, as required by the statute. *See* Minn.Stat. § 631.21 ("If the court dismisses an action, the reasons for the dismissal must be set forth in the order and entered upon the minutes."). Although the district court found that "it appears there would be no admissible evidence at trial sufficient to survive a motion for judgment of acquittal," the state still has available the testimony of the inmate allegedly assaulted by Gault and Zielke. As in *Hendrickson,* the state has "a competent witness" to Gault and Zielke's conduct. *See* 395 N.W.2d at 461. Consequently, the dismissal in the interests of justice does not effectively prevent further prosecution, and the order of dismissal under section 631.21, therefore, is not appealable.

### IV.

■ Gault argues that she has been denied her right to a speedy trial and that the complaint against her, therefore, must be dismissed. Gault seeks review of the district court's first pretrial order, in which the court held that Gault did not demonstrate that a seven-week delay was "so prejudicial as to override the interests in a joint trial." In the order from which the state appeals, the court denied Gault's motion to dismiss for denial of a speedy trial, determining that Gault's motion was moot because another judge had already ruled on it.

The state argues that review of the district court's prior order denying Gault's motion for a speedy trial is not properly before this court because Gault did not raise it in a cross-appeal pursuant to Minn. R.Crim. P. 28.04, subd. 3. That rule states:

**Cross–Appeal by Defendant.** Upon appeal by the prosecuting attorney, the defendant may obtain review of any pretrial * * * order which will adversely affect the defendant, by filing a notice of cross-appeal with the clerk of the appellate courts, together with proof of service on the prosecuting attorney * * *. Failure to serve the notice does not deprive the Court of Appeals of jurisdiction over defendant's cross-appeal, but is ground only for such action as the Court of Appeals deems appropriate, including dismissal of the cross-appeal.

Gault did not file a notice of cross-appeal in this case. This court, therefore, does not have jurisdiction to address Gault's challenge to the district court's first pretrial order.

Gault argues that failure to *file* a notice of cross-appeal does not deprive this court of jurisdiction over her cross-appeal. Rule 28.04, subd. 3, however, states that failure to *serve* a notice of cross-appeal does not deprive this court of jurisdiction. Although this court may have had jurisdiction over the issue if Gault had failed only to *serve* the notice of appeal on the state, the plain language of the rule requires Gault at least to *file* a notice of cross-appeal in order to obtain review of a pretrial order.

■ Gault also argues that the speedy trial issue is reviewable on appeal because the state raised it in its brief. The state, however, raised the issue only for the limited purpose of arguing that the speedy trial issue is not properly reviewable because Gault did not raise it in a cross-appeal. Further, we do not find support in Minnesota law for Gault's position that mere mention of an issue in the state's appellate brief grants this court jurisdiction over the order by which the district court decided that issue.

### DECISION

The district court did not err by dismissing the complaints and suppressing the testimony of 12 witnesses. The district court's order dismissing the complaints in the interests of justice is not appealable. This court does not have jurisdiction over Gault's challenge

to the district court's order denying her motion for a speedy trial.

**Affirmed.**